UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY,

                              Plaintiff,

          -against-

JOSEPH RECCA, JAMES RECCA, LOIS C.
RECCA, JESSICA BORNSCHEIN, *individually
and as Administratrix of the Estate of Ryan T.
Bornschein*, MICHAEL SOSA, MICHAEL
CORBETT, THE CITY OF NEW YORK, and THE
NEW YORK CITY POLICE DEPARTMENT,

                              Defendants.
-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
21-cv-01544 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

          Presently before the Court in this diversity-declaratory judgment action, on

referral from the Honorable Joan M. Azrack for Report and Recommendation, is

Plaintiff the Travelers Home and Marine Insurance Company's ("Plaintiff" or

"Travelers") motion for summary judgment pursuant to Rule 56 of the Federal Rule

of Civil Procedure ("Fed. R. Civ. P."). *See* Plaintiff's Motion for Summary Judgment

("Plaintiff's Motion" or "Pl. Mot."), Docket Entry ("DE") [47]. Defendant Jessica

Bornschein ("Jessica"), individually and as administratrix of the Estate of Ryan T.

Bornschein ("Bornschein"), opposes. *See* Jessica Bornschein's Opposition to

Plaintiff's Motion, DE [48-1].[1]

---

[1] Jessica is the only Defendant that has appeared in this action. *See generally* Docket.

By way of Complaint dated March 24, 2021, Plaintiff commenced this litigation against Defendants Jessica, Joseph Recca ("Joseph"), James Recca ("James"), Lois C. Recca ("Lois"), Michael Sosa ("Sosa"), Michael Corbett ("Corbett"), the City of New York (the "City"), and the New York City Police Department ("NYPD," collectively "Defendants"),[2] seeking a declaration that Travelers has no obligation to provide coverage to, defend, or indemnify Joseph in connection with Jessica's lawsuit against Joseph, Sosa, Corbett, the City and the NYPD arising out of her son Bornschein's death (the "Underlying Action"). *See* Complaint ("Compl"), DE [1]. For the reasons set forth below, Plaintiff has failed to establish that it has no duty to defend or indemnify Joseph in connection with the Underlying Action as a matter of law. Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

I.    **BACKGROUND**

A. **Facts**

The following facts are taken from the pleadings, affidavits, exhibits, and the parties' Local Civil Rule 56.1(a) statements. Unless otherwise noted, these facts are not in dispute. Plaintiff Travelers is a Connecticut corporation with a principal place of business in Hartford, Connecticut. Compl. at ¶ 2. Defendants Jessica, Joseph, James, Lois, Sosa and Corbett are individuals residing in Suffolk County, New York. *See id.* at ¶¶ 3-8.

---

[2] On May 11, 2021, the Honorable Denis R. Hurley, then assigned to this matter, so-ordered a stipulation dismissing the City and the NYPD as Defendants. *See* DE [11]; Order Dismissing Parties dated May 11, 2021.

1. <u>The Insurance Policy</u>

Travelers issued a homeowners insurance policy (the "Policy") to James and Lois for the period of January 23, 2019 to January 23, 2020, under the policy number 6038141706341.  *See* Plaintiff's Local Rule 56.1 Statement ("Pl. 56.1"), DE 47-10, ¶ 1; Ex. A to Declaration of Jaclyn L. DarConte ("DarConte Decl."), DE [47-1] (Policy). Under Section II – Liability Coverages, as modified by the "Homeowners Additional Coverage Endorsement," the Policy provides personal liability coverage in the event "a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury or property damage caused by an occurrence to which this coverage applies."  Policy, at TRV00285, TRV000295.[3]  Pursuant to this section, Plaintiff is obligated to "pay up to our limit of liability for the damages for which the insured is legally liable" and "provide a defense at our expense by counsel of our choice."  *Id.*

"Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results."  *Id.* at TRV00277*,* ¶ 2.  "Personal injury" means "the injury arising out of one or more of the following offenses:  (a) false arrest, detention or imprisonment, (b) malicious prosecution; (c) libel, slander of defamation of characters; or (d) invasion of privacy, wrongful eviction or wrongful entry."  *Id.* at TRV00293, ¶ 10.  "Insured" is defined to include James, Lois and their relatives that are members of their household.  *See id.* at TRV00277, ¶ 4.  The Policy defines an "occurrence" as "an accident, including exposure to

---

[3] The designations beginning "TRV" reflect the bates numbers assigned to each page of the Policy.

conditions, which results, during the policy period, in:  (a) bodily injury; or (b) property damage," as well as personal injury.  *Id.* at TRV00277, TRV00293, ¶ 6.

Section II – Exclusions, provides in relevant part, that personal liability coverage does not apply to bodily injury, personal injury or property damage:

> (a) which is expected or intended by any insured;
>
> (b) arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured. . . .
>
> This Exclusion does not apply to:  (1) activities which are ordinarily incident to non-business pursuits; (2) incidental business activities of minors; or (3) the rental or holding for rental of an insured location . . . .

*Id.* at TRV00285, TRV00295, Section II – Exclusions, ¶ 1.  Under the Policy, "'business' includes trade, profession or occupation."  *Id.* at TRV000277, ¶ 3.  The Policy does not further define "trade, profession or occupation."  *See* Defendant Jessica's Local Rule 56.1 Statement ("Def. 56.1"), DE [48], ¶ 3.

### 2.  Joseph's Involvement in Narcotics Sales

From January 2017 to July 2020, Joseph was a police officer with the NYPD assigned to a precinct in East Harlem.  *See* Pl. 56.1 at ¶ 10; Def. 56.1 ¶ 17; Ex. D. to Declaration of Amy C. Gross ("Gross Decl."), DE [47-4], Transcript of Deposition of Joseph Recca ("Joseph Tr."), at 9:1-10, 33:23-24.  Plaintiff does not dispute that Joseph lived in the home covered by the Policy at all times relevant to this action.  Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memorandum" or "Pl. Mem."), DE [47-11], at 6.  Throughout his life, Joseph admitted to using molly, cocaine, and ecstasy, and may have taken Oxycodone.  *See* Def. 56.1 at ¶ 19; Joseph Tr. at 56:9-13.

4

Joseph has sold narcotics on multiple occasions, although he was unable to recall exactly how many times he had done so. *See* Pl. 56.1 at ¶¶ 11-12; Def. 56.1 at ¶ 12; Joseph Tr. at 10:22-11:5, 12:13-17, 48:2-11, 74:7-13. According to Joseph, he sold drugs to only two individuals – Bornschein and Corbett. *See* Def. 56.1 at ¶ 11; Joseph Tr. at 12:18-24. During an unspecified period of time and on multiple occasions, Joseph purchased narcotics – including Adderall and Oxycodone – from Sosa[4] and in turn sold those narcotics to others. *See* Pl. 56.1 at ¶ 19; Def. 56.1 at ¶ 26; Joseph Tr. at 40:19-41:3, 44:4-10, 50:19-25, 55:19-25. Joseph bought various amounts of narcotics from Sosa, including at least one purchase of 100 Oxycodone pills for approximately $1,500. Pl. 56.1 at ¶ 22; Joseph Tr. at 55:15-18. According to Joseph, he never intentionally sold fentanyl to anyone, including Bornschein. Def. 56.1 ¶ 23; Joseph Tr. at 38:25-39:6.

At an unspecified time, Joseph obtained a separate cell phone that he used to contact Sosa to arrange narcotics purchases. *See* Pl. 56.1 at ¶ 23; Joseph Tr. at 65:14-66:9. According to Jessica, Joseph testified that "he was not in the 'business' of selling drugs." Def. 56.1 at ¶ 28. Travelers counters that, more specifically, when asked whether it was his business to sell drugs, Joseph responded: "I don't believe it's a business." Plaintiff's Response to Defendant's Counter-Statement of Material Facts ("Pl. Reply 56.1"), DE [50], at ¶ 28; Joseph Tr. at 70:12-20.

---

[4] The record does not contain facts regarding the nature or origin of Joseph's relationship with Corbett or Sosa, other than those included herein.

### 3.  Joseph's Relationship with Bornschein

Joseph first met Bornschein via a mutual friend when he purchased drugs from Bornschein in 2014 while on vacation in Miami, Florida.  *See* Joseph Tr. at 45:24-16. Joseph testified that he considered Bornschein to be a friend.  *See* Def. 56.1 at ¶ 32; Joseph Tr. at 78:19-23.  From 2014 to 2018, Joseph saw Bornschein no more than two to three times per year.  *See* Joseph Tr. at 47:1-25.  In 2018, Joseph encountered Bornschein while out at bars in New York approximately once every other month. *See* Def. 56.1 at ¶ 30; Joseph Tr. at 48:12-49:6.  In the three or four months prior to September 2019, Joseph occasionally played video games at Bornschein's apartment, although he could not testify to the exact number of times he did so.  *See* Def. 56.1 at ¶ 31; Pl. Reply 56.1 at ¶ 31; Joseph Tr. at 75:12-76:13.  During this time, Joseph also spoke with Bornschein two to four times per week, "mostly on the phone."  Def. 56.1 at ¶ 29; Joseph Tr. at 72:4-18.

On August 28, 2019 and again on September 3, 2019, Joseph obtained narcotics – what he believed to be Oxycodone – from Sosa, which he sold to Bornschein.  *See* Pl. 56.1 at ¶¶  7, 15, 20; Def. 56.1 at ¶ 10; Joseph Tr. 10:22-24, 11:20-23, 31:5-32:7, 57:18-20.  Apart from these two occasions, Joseph could not recall the exact amount of times he sold narcotics to Bornschein, although he did not believe it was more than twice. Joseph Tr. 10:22-11:7, 12:13-17.  According to Jessica, Joseph only sold narcotics to Bornschein on these two occasions, *see* Def. 56.1 at ¶ 10, while Plaintiff maintains that Joseph could not recall the precise number of times he did so.  *See* Pl. Reply 56.1 at ¶ 5.  Joseph further testified that he had no independent recollection of ever

6

discussing fentanyl with Bornschein, including whether Bornschein had ever used fentanyl. *See* Def. 56.1 at ¶¶ 24-25; Pl. Reply 56.1 at ¶ 24-25; Joseph Tr. at 67:22-68:11.

According to Joseph, Bornschein sold some of the narcotics he purchased from him to others. *See* Pl. 56.1 at ¶ 16; Joseph Tr. at 27:16-28:6. During an unspecified time period, Bornschein and Joseph exchanged text messages regarding the sale of narcotics, and Joseph told Bornschein that Bornschein could direct people interested in purchasing narcotics to Joseph while Bornschein expected to be incarcerated. *See* Pl. 56.1 at ¶¶ 17-18; Joseph Tr. at 23:2-24:4, 28:12-29:5, 66:10-67:9; Ex. G to Gross Decl. Joseph did not testify as to whether Bornschein ever in fact directed individuals to him to purchase narcotics. *See* Def. 56.1 at Response to ¶ 18.

4. <u>Bornschein's Death</u>

On September 4, 2019, Bornschein died of an overdose of narcotics, including fentanyl. *See* Pl. 56.1 at ¶ 6; Ex. C to Gross Decl. (Autopsy Report). Following Bornschein's death, Joseph continued to sell narcotics to Corbett, although he was unable to recall the number of times he did so. *See* Pl. 56.1 at ¶ 27; Def. 56.1 at Response to ¶ 27; Joseph Tr. at 16:2-16. Joseph met with Corbett on or about July 9, 2020 in Suffolk County in furtherance of narcotics distribution. *See* Pl. 56.1 at ¶ 28; Def. 56.1 at Response to ¶ 28; Joseph Tr. at 15:12-25.

On July 21, 2020, Joseph was arrested in connection with Bornschein's death. Ex. E to Gross Decl. At the time he was arrested, Joseph possessed steroids that he had obtained for personal use. *See* Def. 56.1 at ¶ 18; Joseph Tr. 39:22-40:6. Police

also discovered fentanyl in his personal vehicle, although Joseph testified that he was unaware the narcotics in his car contained fentanyl. *See* Def. 56.1 at ¶ 21-22; Joseph Tr. at 38:21-24, 39:13-21, 49:11-14. Joseph testified that he did not intend to cause Bornschein's death. *See* Def. 56.1 at ¶ 27; Joseph Tr. at 49:24-50:4.

On February 26, 2021, Joseph pled guilty to manslaughter in the second degree, conspiracy in the second degree and criminal sale of a controlled substance in the third degree in connection with Bornschein's death. *See* Pl. 56.1 at ¶ 8; Def. 56.1 at ¶ 14; Ex. E to Gross Decl. He was sentenced to five years of incarceration and two years of post-release probation. *See* Def. 56.1 at ¶ 15; Joseph Tr. 50:10-13.

### 5. The Underlying Action

On December 1, 2020, Jessica – Bornschein's mother – filed the Underlying Action against Joseph, Sosa, Corbett, the City and the NYPD in New York Supreme Court for New York County. *See* Pl. 56.1 at ¶ 31; Ex. B to DarConte Decl. ("Underlying Complaint" or "Underlying Compl."). In connection with Bornschein's death, Jessica asserted claims for negligence, loss of services and companionship, wrongful death, and negligent infliction of emotional distress, as well as claims pursuant to 42 U.S.C. § 1983 and the Drug Dealer Liability Act, N.Y. Gen. Oblig. § 12-101 *et seq.* *See* Pl. 56.1 at ¶¶ 32-33; Underlying Compl.

Specifically, Jessica pleads that Joseph, Sosa and Corbett "created and were involved in a drug ring" and that the drugs that caused Bornschein's death originated from that drug ring. Pl. 56.1 at ¶ 9; Underlying Compl. at ¶¶ 15-16. Jessica also alleges that Joseph sold narcotics to Bornschein out of the home of a co-conspirator

in Suffolk County, New York.  *See* Pl 56.1 at ¶ 13; Underlying Compl. at ¶ 17.  The Underlying Complaint further asserts that Joseph, Sosa and Corbett "negligently sold narcotics" to Bornschein and that their "carelessness, recklessness and gross negligence" caused Bornschein's death.  *See* Underlying Compl. at ¶¶ 22, 31.  Jessica also alleges that Joseph, Sosa, and Corbett were "drug traffickers" that "knowingly participated in the drug market within New York" in connection with her Drug Dealer Liability Act claim.  *See* Pl. 56.1 at ¶ 14; Underlying Compl. at ¶¶ 48-49.

While Travelers has disclaimed coverage for the Underlying Action, Plaintiff has provided a courtesy defense to Joseph, subject to a full reservation of rights.  Pl. 56.1 at ¶ 34.  The record does not indicate whether the Underlying Action is ongoing.

B. **Procedural History**

As stated above, Plaintiff commenced this action against Defendants by way of Complaint dated March 24, 2021, seeking a declaration that Travelers has no obligation to defend or indemnify Joseph in the Underlying Action.  *See* Compl.  On May 11, 2021, Judge Hurley, then assigned to this action, ordered that the City and the NYPD be dismissed as parties.  *See* Order Dismissing Parties dated May 11, 2021.  Jessica answered the Complaint on May 20, 2021.  *See* Answer ("Ans."), DE [13].  After the deadline for the remaining Defendants to answer or otherwise respond had passed, Plaintiff requested that the Court issue certificates of default against Joseph, James, Lois, Corbett and Sosa (the "Defaulting Defendants"), which the Clerk of Court did on July 13, 2021.  *See* DEs [15] – [24].

On September 24, 2021, Plaintiff filed a motion for default judgment against the Defaulting Defendants. DE [27]. Thereafter, discovery between Travelers and Jessica commenced. *See* DE [28]. This case was reassigned to Judge Azrack on July 8, 2022. *See* Case Reassignment, dated July 8, 2022. On August 3, 2022, Plaintiff agreed to withdraw its motion for default judgment without prejudice until such time as the appearing party's rights are adjudicated. DE [35]; Order Withdrawing Motion dated Aug. 3, 2022. Plaintiff's Motion, seeking summary judgment on its sole declaratory judgment claim, was filed on July 11, 2023 and referred to this Court for Report and Recommendation on October 18, 2023. *See* Pl. Mot.; Order Referring Motion dated Oct. 18, 2023.

For the reasons set forth below, Plaintiff has failed to establish that it has no duty to defend or indemnify Joseph in connection with the Underlying Action as a matter of law. Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

## II.    LEGAL STANDARDS

### A. Declaratory Judgment

The Declaratory Judgment Act empowers a federal court to "declare the rights and other legal relations" of an interested party in a "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a); *Kinojuz I.P. v. IRP Int'l Inc.*, No. CV–11–299, 2016 WL 5936875, at *12 (E.D.N.Y. Oct. 12, 2016). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241,

10

57 S. Ct. 461, 464 (1937). "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991). A court will consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *W. Heritage Ins. Co. v. Jacobs Dev. Corp.*, No. 12-CV-5718, 2014 WL 297792, at *8 (E.D.N.Y. Jan. 27, 2014) (citing *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. C*o., 411 F.3d 384, 389 (2d Cir. 2005)).

## B. <u>Summary Judgment</u>

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").  In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sep. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III.   DISCUSSION

Plaintiff seeks summary judgment on its sole claim in this action – its request for a declaration that Travelers has no duty to defend or indemnify Joseph or any other party for any claim arising out of the Underlying Action.  *See* Pl. Mem. at 2.  As a threshold matter, Plaintiff argues Bornschein's death was not a covered "occurrence" within the meaning of the Policy because it was not an accident.  *See id.* at 11-12.   Travelers further argues that claims against Joseph relating to

12

Bornschein's death are excluded from the Policy's personal liability coverage because: (1) Bornschein's death arose out of Joseph's business, *i.e.,* his involvement in the sale of narcotics, and (2) in the alternative, Joseph expected or intended Bornschein's death. *See id.* at 8-12.  Lastly, Plaintiff asserts that, if its previous arguments fail, the extension of coverage to Joseph under these circumstances runs contrary to New York's public policy. *See id* at 12-14.

For the reasons set forth below, Plaintiff has failed to establish that it has no duty to defend or indemnify Joseph in connection with the Underlying Action as a matter of law.  Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

## A. <u>The Duty to Defend</u>

While the Policy does not have a choice-of-law provision, Travelers and Jessica both assume New York law applies in their respective briefs.  Accordingly, the Court applies New York law to the present motion.  *See Henneberry v. Sumitomo Corp. of Am.*, No. 04-civ-2128, 2005 WL 991772, at *5, n. 3 (S.D.N.Y. Apr. 27, 2005) ("Where the parties so assume, the Court need not address choice of law *sua sponte*.").  Under New York law, an insurer's "duty to defend is triggered by the allegations in the underlying complaint[.]"  *See BP Air Conditioning Corp. v. OneBeacon Ins. Grp.*, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302, 305 (2007).  The duty is "exceedingly broad and far more expansive than the duty to indemnify its insured."  *Value Wholesale, Inc. v. KB Ins. Co.*, No. 18-cv-5887, 2020 WL 1536387, at *8 (E.D.N.Y. Mar. 31, 2020) (internal citations omitted).  Indeed, an insurer must defend its insured "whenever

the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *Id.* (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 876 (1984)); *see GMM Realty, LLC v. St. Paul Fire & Marine Ins. Co.*, 129 A.D.3d 909, 909, 11 N.Y.S.3d 661, 662 (2d Dep't 2015) (holding that allegations against an insured must be "construed liberally" and an insurer will owe a defense to the insured if the allegations "suggest a reasonable possibility of coverage"). An insurer's duty to defend applies "[i]f the allegations of the complaint are even potentially within the language of the insurance policy[,]" *see Frank v. Continental Cas. Co.*, 123 A.D.3d 878, 880, 999 N.Y.S.2d 836, 838 (2d Dep't 2014), "even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014).

When interpreting coverage, "[t]he unambiguous terms of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such terms is a question of law for the court." *Viznitz v. Church Mut. Ins. Co.*, 132 A.D.3d 853, 854, 18 N.Y.S.3d 168, 170 (2d Dep't 2015) (internal citations omitted); *see Rosano v. Freedom Boat Corp.*, No. 13-cv-842, 2015 WL 4162754, at *3 (E.D.N.Y. July 8, 2015) ("Construction of an insurance policy is governed by the rules of construction applicable to contracts generally . . . and an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract") (internal quotation and citations omitted). "Where an agreement on its face is

14

reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Viznitz*, 132 A.D.3d at 854, 18 N.Y.S. at 170 (internal quotation and citations omitted).

### 1. Whether Bornschein's Death is an "Occurrence" Under the Policy

Here, Travelers does not contest that Joseph is an insured within the meaning of the Policy, or that the Underlying Action asserts a claim for bodily injury, *i.e.*, Bornschein's death. *See* Pl. Mem. at 1. Plaintiff argues, however, that Bornschein's death was not an "occurrence" within the meaning of the Policy, and so personal liability coverage does not apply. *See id.* at 11-12.

As noted above, the Policy provides personal liability coverage in the event "a claim is made . . . against any insured for damages because of bodily injury, . . . caused by an occurrence to which this coverage applies." Policy, at TRV00285, TRV000295. The Policy defines an "occurrence" in relevant part as "an *accident*, including exposure to conditions, which results, during the policy period, in: (a) bodily injury; or (b) property damage." *Id.* at TRV00277, ¶ 6 (emphasis added). The term "accident" is not further defined.

In the absence of a contractual definition, "accident" must be given its plain and ordinary meaning. *See Viznitz*, 132 A.D.3d at 854, 18 N.Y.S. at 170. The New York Court of Appeals has defined "accident" to "pertain not only to an unintentional or unexpected event . . . but equally to an intentional or expected event which unintentionally or unexpectedly" causes harm. *Automobile Ins. Co. of Hartford v. Cook,* 7 N.Y.3d 131, 138, 818 N.Y.S.2d 176, 180 (2006) (quoting *Miller v. Cont'l Ins.*

15

*Co.*, 40 N.Y.2d 675, 678, 389 N.Y.S.2d 565, 566 (1976)); *Allegany Co-op. Ins. Co. v. Kohorst*, 254 A.D.2d 744, 744, 678 N.Y.S.2d 424, 425 (4th Dep't 1998) ("Accidental results can flow from intentional acts. The damage in question may be unintended even though the original acts or acts leading to the damage were intentional.").

Applying the above principles, the Court cannot conclude as a matter of law that Bornschein's death was not an accident – and therefore not an occurrence – within the meaning of the Policy. Although Joseph may have intentionally sold narcotics to Bornschein, the Underlying Action does not allege that Joseph intentionally killed Bornschein. In connection with her negligence and wrongful death claims, Jessica alleges that Joseph and his co-conspirators "negligently sold narcotics" to Bornschein and that their "carelessness, recklessness and gross negligence" caused Bornschein's death. Underlying Compl. at ¶¶ 22, 31.[5] Moreover, Joseph testified that he did not intend to kill Bornschein. *See* Joseph Tr. at 49:24-50:4. Given that Bornschein's death appears to be the unintended result of Joseph's intentional actions, the Court cannot determine that it was not an accident as a matter of law. *See Automobile Ins. Co. of Hartford,* 7 N.Y.3d at 138, 818 N.Y.S.2d at 180 (concluding that if the insured negligently caused the death, the death would be an accident under the policy). Accordingly, the Court recommends that Plaintiff's

---

[5] Travelers argues that Bornschein's death was not an accident because Joseph admitted that "he was aware of the substantial and unjustifiable risk that another person's death would occur when he sold narcotics to [] Bornschein, but he disregarded these risks and sold the narcotics anyway." Pl. Mem. at 11 (citing Joseph Tr. at 19:10-20:17. While this admission may support the conclusion that Joseph acted recklessly, it does not transform Bornschein's death into an intentional result as a matter of law. *See Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 649, 593 N.Y.S.2d 966, 970 (1993) "(A person may engage in behavior that involves a calculated risk without expecting that an accident will occur – in fact, people often seek insurance for just such circumstances.").

Motion be denied as to the issue of whether Bornschein's death is a covered occurrence under the Policy.

## 2. Whether an Exclusion Applies to the Underlying Action

Plaintiff further argues that it has no duty to defend Joseph because the Underlying Action falls into one of two of the Policy's exclusions from personal liability coverage. *See* Pl. Mem. at 8-12. When an insurer relies on an exclusion clause to deny coverage, "the insurer has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions and, further, that the allegations, *in toto*, are subject to no other interpretation.'" *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73–74, 544 N.Y.S.2d 531, 533 (1989) (quoting *International Paper Co. v Continental Cas. Co.*, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 875 (1974)). Moreover, "policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 792 (2003). The Court considers each potential exclusion proffered by Travelers in turn.

### a. Business Pursuits Exclusion

Travelers first asserts that Bornschein's death arose out of Joseph's business pursuits, *i.e.*, narcotics sales, and that as a result, the Underlying Action is excluded from the Policy. *See* Pl. Mem. at 8-11. As noted above, the Policy excludes from personal liability coverage claims or suits brought against the insured for "bodily injury, personal injury or property damage . . . arising out of business pursuits of any

17

insured . . . ."  Policy, at TRV00285, TRV00294-95, ¶ 1(b).  "Business" is defined to include "trade, profession or occupation," *id.* at TRV000277, ¶ 3, which are not further defined.  *See* Def. 56.1 at ¶ 3.

To determine whether a course of action constitutes a "business pursuit" within a policy's exclusion, New York courts look to whether the insured "'regularly engaged in a particular activity with a view toward earning a livelihood or making a profit.'"  *Cardinal v. Long Island Power Auth.*, 309 F. Supp. 2d 376, 391 (E.D.N.Y. 2004) (quoting *Showler v. Am. Mfrs. Mut. Ins. Co.*, 261 A.D.2d 896, 897, 690 N.Y.S.2d 369 (4th Dep't 1999)).  "Thus, to constitute a business, two elements must be satisfied: (1) continuity and (2) profit motive."  *Cardinal,* 309 F. Supp. 2d at 391.  The continuity element is satisfied by demonstrating that there was a "customary engagement" or stated occupation."  *Id.* (citing *Ploen v. Aetna Cas. & Sur. Co.*, 138 Misc. 2d 704, 707, 525 N.Y.S.2d 522, 525 (Sup. Ct. 1988)).  Moreover, the business engaged in by the insured "need not necessarily be limited to his sole occupation or employment."  *Shapiro v. Glens Falls Ins. Co.,* 47 A.D.2d 856, 365 N.Y.S.2d 892 (2d Dep't 1975), *aff'd,* 39 N.Y.2d 204, 383 N.Y.S.2d 263 (1976).

Here, it is undisputed that Joseph's participation in the sale of drugs was motivated by profit.  *See* Joseph Tr. at 11:20-12:12 (testifying that he purchased pills from Sosa and sold them Bornschein in exchange for money).  With respect to the continuity element, however, the Court cannot conclude that narcotics sales were Joseph's "customary engagement" or "stated occupation" as a matter of law.  *See* *Cardinal,* 309 F. Supp. 2d at 391.  While Jessica alleges in the Underlying Action that

Joseph was a "drug trafficker[]" and "participated in the drug market within New York," Underlying Compl. at ¶¶ 48-49, the exact extent to which Joseph engaged in the drug trade is not clear from the record.  Although Joseph has bought and sold narcotics multiple times, he was unable to recall the exact number of instances he had done so.  Joseph Tr. at 10:22-11:5, 12:13-17, 48:2-11, 74:7-13.  Further, between 2017 and the present, Joseph only ever sold drugs to Corbett and Bornschein, and he could only testify to selling narcotics to Bornschein on two occasions in 2019.  *Id.* at 10:22-11:7; 12:13-24.

Moreover, although Joseph purchased a separate cell phone for the purposes of arranging drug sales with Sosa, *see id.* at 65:14-66:9, this fact alone does not establish that Joseph engaged in narcotics sales on a continuous basis as a matter of law.  The frequency and overall amount of times that Joseph bought and sold drugs is not clearly defined in the record, apart from the two sales to Bornschein shortly before his death.  As such, there is an issue of material fact as to whether Joseph's sales of narcotics were sufficiently continuous to qualify as a business pursuit.  *See Minnesota Fire & Cas. Co. v. Greenfield,* No. 00-3886, 2001 WL 36177439 (Pa.Com.Pl. Mar. 14, 2001) (applying the continuity and profit motive test and concluding there was an issue of material fact as to the business pursuits exclusion where insured sold drugs on two occasions).  This conclusion is consistent with the principle that policy exclusions are to be interpreted narrowly, with any ambiguity resolved in favor of the insured.  *See Cragg v. Allstate Indem. Corp.,* 17 N.Y.3d 118, 122, 926 N.Y.S.2d 867, 869 (2011); *Belt Painting Corp.,* 100 N.Y.2d at 383, 763 N.Y.S.2d at 792.  Accordingly,

the Court concludes that Travelers has not met its burden of demonstrating that Joseph's conducts fall exclusively within the Policy's business pursuit exclusion as a matter of law.

### b. Expected or Intended Exclusion

Plaintiff further argues that the Underlying Action is excluded from the Policy's personal liability coverage because Joseph expected or intended to cause Bornschein's death. *See* Pl. Mem. at 11-12. Under the Policy, "bodily injury or property damage . . . which is expected or intended by any insured" is excluded from personal liability coverage. Policy at TRV00285, ¶ 1(a).

"The New York courts have generally read 'expect or intend' provisions to exclude only those losses or damages that are not accidental." *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1150 (2d Cir. 1989). As noted above, an accident may consist of the unintentional consequences of intentional actions. *See Automobile Ins. Co. of Hartford,* 7 N.Y.3d at 138, 818 N.Y.S.2d at 180. Generally, recovery will only be barred under an "expect or intend" exclusion where the insured "knew that the damages would flow directly and immediately from [his] intentional act." *City of Johnstown, N.Y.,* 877 F.2d at 1150. Moreover, it is not sufficient that an insured is warned that damages might ensue from his actions or took such actions based on a calculated risk. *See id.* (citing *McGroarty v. Great Am. Ins. Co.*, 36 N.Y.2d 358, 363, 368 N.Y.S.2d 485, 489 (1975)).

With these facts, the Court cannot conclude that the Underlying Action is excluded from coverage under the Policy's "expected or intended" exclusion as a

matter of law.  As described above, the Underlying Complaint describes Joseph's conduct as negligent and reckless, and Joseph testified that he did not intend to cause Bornschein's death.  *See* Sec. III.A.1, *supra;* Underlying Compl. at ¶¶ 22, 31; Joseph Tr. at 49:24-50:4.  Moreover, Plaintiff's argument that Bornschein's death was "expected or intended by inference" is of no moment.  Pl. Mem. at 12.  Travelers relies on two cases from outside of New York in support of this point, *see id.* (citing *State Farm Fire and Cas. Co. v. Schwich*, 749 N.W.2d 108, 113 (Minn. App. 2008) and *State Farm Fire and Cas. Co. v. Baer*, 745 F. Supp. 595, 599 (N.D. Cal. 1990)), and fails to articulate why the Court should adopt this expansive reading of the "expected or intended" exclusion.  *See Belt Painting Corp.,* 100 N.Y.2d at 383, 763 N.Y.S.2d at 792 (noting that policy exclusions should be narrowly construed).  Accordingly, Plaintiff has not met its burden of demonstrating that the allegations of the Underlying Complaint fall entirely within the "expected or intended" exclusion.  The Court therefore recommends that Plaintiff's Motion be denied to the extent it argues that an exclusion under the Policy applies to the Underlying Action.

### 3.  Whether New York's Public Policy Precludes Coverage

Lastly, Travelers argues that extending coverage to Joseph under these circumstances, *i.e.,* his criminal sale of narcotics to Bornschein, would violate New York's public policy.  *See* Pl. Mem. at 12-14.  As a general matter, courts in New York are "reluctant to inhibit freedom of contract by finding insurance policy clauses violative of public policy."  *J.P. Morgan Securities Inc. v. Vigilant Ins. Co.,* 21 N.Y.3d 324, 334, 970 N.Y.S.2d 733, 738 (2013).  "The mere fact that an act may have penal

consequences does not necessarily mean that insurance coverage for civil liability arising from the same act is precluded by public policy." *Cowan v. Codelia, P.C.*, No. 98-cv-5548, 1999 WL 1029729, at *9 (S.D.N.Y. Nov. 10, 1999) (quoting *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 399, 442 N.Y.S.2d 422, 426 (1981)). Coverage for liability arising from criminal conduct "depends on whether the insured, in committing his criminal act, intended to cause injury." *Goldfarb,* 53 N.Y.2d. at 399, 442 N.Y.S.2d at 426.

Here, as noted above, the record does not support the conclusion that Joseph intentionally caused Bornschein's death, and therefore, Plaintiff's public policy argument fails.  The only New York Court of Appeals case to which Travelers cites in support of its argument, *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 581 N.Y.S.2d 142 (1992), concerned claims arising from the sexual abuse of children, and the Court's decision turned on the construction of an exclusion in the relevant policy, not whether public policy precluded coverage.  *See id.* at 161-62, 146-47.  As a result, Plaintiff has not established that its obligation to defend Joseph under these circumstances violates New York's public policy as a matter of law.  As such, the Court respectfully recommends denying Plaintiff's Motion to the extent it seeks a declaration that that it has no duty to defend Joseph in the Underlying Action.

## B. **The Duty to Indemnify**

"The duty to indemnify is unquestionably narrower than the duty to defend." *Specialty Nat. Ins. Co. v. English Bros. Funeral Home,* 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) (citing *Ruder & Finn Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 669,

439 N.Y.S.2d 858, 861 (1981)).  As a result, courts in the Second Circuit often dismiss the indemnification portions of declaratory judgment actions, where, as here, there has been no determination as to liability in an underlying state court action.  *See, e.g., Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 196 (E.D.N.Y. 2018) ("where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties, it is entirely appropriate for a district court to dismiss a declaratory judgment action") (citing *Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 604 (2d Cir. 2012) (internal quotations, brackets, and ellipses omitted)); *see Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012) ("An action to declare the insurer's duty to indemnify is premature and does not lie where the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action") (internal quotations and citations omitted).

Here, the record is devoid of evidence indicating whether Joseph has been found liable in the Underlying Action.  Thus, there is currently no basis for Plaintiff to indemnify him.  *Cf. Lighton Indus., Inc.*, 348 F. Supp. 3d at 196 ("At this time, there is no liability for which defendants could indemnify plaintiffs").  Moreover, the outcome of the Underlying Action will determine the extent to which Joseph is liable to Jessica.  If Joseph is absolved of liability in state court, then it necessarily follows that he will have no basis to seek indemnity from Travelers.  Accordingly, the Court

23

respectfully recommends denying the portion of Plaintiff's Motion seeking a declaration that Travelers is not obligated to indemnify Joseph in connection with the Underlying Action.

## IV.    CONCLUSION

For the reasons set forth below, Plaintiff has failed to establish that it has no duty to defend or indemnify Joseph in connection with the Underlying Action as a matter of law.   Accordingly, the Court respectfully recommends that Plaintiff's Motion be denied in its entirety.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-cv-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:       Central Islip, New York
             January 8, 2024

                                         /s/ Steven I. Locke
                                         STEVEN I. LOCKE
                                         United States Magistrate Judge